UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

W.A. GRIFFIN, M.D.,

       Plaintiff,

    v.

BLUE CROSS BLUE SHIELD
HEALTHCARE PLAN OF
GEORGIA, INC., et al.,

       Defendants.

CIVIL ACTION NO.

1:22-CV-00085-SEG

## O R D E R

This case is before the court on Defendant Laboratory Corporation of America Holdings' motion to dismiss (Doc. 29), Defendant Crestline Hotel and Resorts, LLC's motion to dismiss (Doc. 31), Defendant Truist Financial Corporation's motion to dismiss (Doc. 32), Defendant William Carter Company's motion to dismiss (Doc. 33), Defendant Blue Cross Blue Shield Healthcare Plan of Georgia, Inc.'s motion to dismiss (Doc. 34), and Defendant Grady Memorial Hospital Corporation's motion for summary judgment (Doc. 48). Having carefully considered the parties' respective positions and applicable law, the Court enters the following order.

Dr. W.A. Griffin, a dermatologist, and frequent *pro se* filer in this Court, brings this suit in response to Defendant Blue Cross Blue Shield Healthcare Plan of Georgia, Inc.'s ("BCBS") alleged failure to process and alleged "deletion" of certain requests for reimbursement made by Dr. Griffin for her treatment of patients.  This case is the latest in a series of lawsuits brought by Dr. Griffin, who wishes to obtain reimbursement from health plans through her patients' assignments of benefits.[1]  Dr. Griffin's arguments in this case mirror those made, and rejected, in the myriad other cases she has filed.  This time, however, she raises one new argument—that a recent Supreme Court case, *Rutledge v. Pharmaceutical Management Association*, 141 S. Ct. 474 (2020), requires the Court to find in her favor.  It does not.  For the reasons set forth below, this case is due to be dismissed.

## I.   Factual Background

This case arises from Dr. Griffin's treatment of nine patients who were insured under ERISA-governed employee welfare benefit plans.  The patients are identified in the amended complaint as: N.R., M.C., K.B., M.S., J.F., C.S., K.H., K.K., and B.K.   (Doc. 5 ¶¶ 26-43.)   The patients were employees of Defendant Crestline Hotels & Resorts, LLC ("Crestline"), Defendant Truist

---

[1] See *Griffin v. Coca-Cola Refreshments USA, Inc.*, 989 F.3d 923, 929 n.2 (11th Cir. 2021) for a non-exhaustive list of Dr. Griffin's cases in this Court.

Financial Corporation ("Truist"), Defendant Laboratory Corporation of America Holdings ("Labcorp"), Defendant William Carter Company, Defendant Grady Memorial Hospital Corporation d/b/a Grady Health System ("Grady Health System"), non-Defendant Yardi Systems, Inc. ("Yardi Systems"), and non-Defendant Southeastern Data Cooperative ("Southeastern Data"). (*Id.*) These employers sponsored Dr. Griffin's patients' benefit plans, and BCBS administered claims for the plans. (*Id.*) Dr. Griffin was an out-of-network healthcare provider under each of the plans. (*See id.* ¶¶ 2, 56.)

As a condition of treatment, Dr. Griffin required her patients to assign their rights and benefits under their ERISA-governed benefits plans to her. (*Id.* ¶ 54.) Purporting to stand in the shoes of her patients, Dr. Griffin then submitted claims to BCBS to be reimbursed for the treatment she provided. (*Id.* ¶¶ 26-43.) Dr. Griffin alleges that BCBS did not reimburse her. (*Id.*) Instead, Dr. Griffin alleges that BCBS "deleted the claims from its system and sent an automatically generated form letter that stated[,] 'Resubmit with correct billing NPI [National Provider Identifier].'" (*Id.*) Dr. Griffin contends that BCBS's alleged refusal to pay benefits and "delet[ion]" of claims constitute a breach of the fiduciary duty BCBS owed to Dr. Griffin as an assignee of her patients' rights and benefits.

3

The primary obstacle Dr. Griffin faces in bringing her claims, and the basis for dismissal in many of her other cases, is that her patients' plans all contain anti-assignment provisions.[2]   In this case, the anti-assignment provisions in the patients' plans generally prohibit plan members (*i.e.*, the patients) from assigning rights and benefits to a provider without obtaining consent from BCBS.  Dr. Griffin does not allege that BCBS consented to the assignments.

## II.   Procedural History

On December 8, 2021, Dr. Griffin commenced this ERISA action against BCBS in the State Court of Fulton County.  (Doc. 1-1.)  BCBS timely removed the case to this Court.  (Doc. 1.)  On January 14, 2022, BCBS moved to dismiss Dr. Griffin's complaint.  (Doc. 3.)  On January 25, 2022, Dr. Griffin filed an

---

[2] Although Dr. Griffin did not attach the anti-assignment provisions to her amended complaint, she generally refers to those provisions throughout that document (*see* Doc. 5 ¶¶ 55, 58), and each Defendant attached its plan documents to its respective motion.  The Court may therefore consider the plan documents in deciding the motions to dismiss, without converting them to motions for summary judgment, because the plan documents are "undisputed and central to Plaintiff's claims."  *See Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment.").

amended complaint as a matter of course.  (Doc. 5.)  The Court then denied BCBS's motion to dismiss (Doc. 3) as moot.  Dr. Griffin's amended complaint added as Defendants Truist, Crestline, William Carter Company, Labcorp, and Grady Health System.  (Doc. 5 at 1.)  These additional Defendants were served on February 1, 2022.  (Docs. 7-10.)

Defendants Labcorp (Doc. 29), Crestline (Doc. 31), Truist (Doc. 32), William Carter Company (Doc. 33), and BCBS (Doc. 34) filed motions to dismiss Dr. Griffin's amended complaint.  Defendant Grady Health System filed a motion for summary judgment.  (Doc. 48.)  All six motions are fully briefed.

## III.   Legal Standards

### A. Motion to Dismiss Standard

Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although detailed factual allegations are not required, the pleading must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Importantly, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  For a complaint

to be "plausible on its face," the facts alleged must "allo[w] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Wooten v. Quicken Loans, Inc.* 626 F.3d 1187, 1196 (11th Cir. 2010). While all well-pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff, *Powell v. Thomas*, 643 F.3d 1300, 1302 (11th Cir. 2011), a court need not accept as true the plaintiff's legal conclusions, including those couched as factual allegations, *Iqbal*, 556 U.S. at 678.

Accordingly, evaluation of a motion to dismiss entails a two-pronged approach: (1) a court must identify any allegations in the pleading that are merely legal conclusions to which the "assumption of truth" should not apply, and (2) where there are remaining well-pleaded factual allegations, a court should "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

When a plaintiff is *pro se*, his or her complaint is "held to less stringent standards than formal pleadings drafted by lawyers" and must be "liberally construed." *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation and quotation omitted); *see also Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006). At the same time, the Court "need not accept as true legal conclusions or unwarranted factual inferences" in complaints filed by *pro se* litigants. *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2006) (quotation

and citation omitted).   Further, *pro se* plaintiffs must comply with threshold requirements of the Federal Rules of Civil Procedure.   *See Trawinski v. United Techs.*, 313 F.3d 1295, 1299 (11th Cir. 2002).

### B. Motion for Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A factual dispute is genuine if the evidence would allow a reasonable jury to find for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it is "a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The moving party bears the initial burden of showing the Court, by reference to materials in the record, that there is no genuine dispute as to any material fact that should be decided at trial.  *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The moving party's burden is discharged merely by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support [an essential element of] the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325.  In determining whether the moving party has

met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir. 1996).

Once the moving party has adequately supported its motion, the non-movant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no "genuine [dispute] for trial" when the record as a whole could not lead a rational trier of fact to find for the nonmoving party. *Id.* (citations omitted).

## IV. Discussion

Dr. Griffin's amended complaint asserts one count of breach of fiduciary duty, pursuant to ERISA's civil-action provision, section 502(a)(3) (29 U.S.C. § 1132(a)(3)), against all Defendants. (Doc. 5 ¶¶ 60-62.) Dr. Griffin seeks the following relief: (1) "[e]quitable relief, including waiver, equitable estoppel, and surcharge"; (2) "injunctive relief preventing Blue Cross from deleting Dr. Griffin's claims and/or mandat[ing] that Blue Cross appoint Dr. Griffin an in-house claims agent that will oversee her claims"; (3) "injunctive relief mandating [that the] ERISA plan administrator remove[ ] Blue Cross as a

claims vendor in the Blue Card Program"[3] and (4) "injunctive relief mandating that [the] ERISA plan administrators provide a direct contact to its legal department to report violations and/or corporate bullying by Blue Cross." (*Id.* at 23.)  In their respective motions, Defendants argue Dr. Griffin's amended complaint should be dismissed because Dr. Griffin does not have standing under ERISA to assert a claim for breach of fiduciary duty on behalf of plan members.[4]

### A. Dr. Griffin Lacks Standing Under ERISA to Bring this Suit

Like Dr. Griffin's prior cases, this case is governed by ERISA, which "sets minimum standards for employee benefits plans," such as the healthcare plans at issue here.  *Griffin v. Coca-Cola Refreshments USA, Inc.* 989 F.3d 923, 931

---

[3] The "BlueCard Program" is "a national program that enables members of one Blue Cross and Blue Shield (BCBS) Plan to obtain health care services while traveling or living in another BCBS Plan's service area."  *BlueCard Program*, BLUE CROSS BLUE SHIELD OF ILL. (last visited Nov. 29, 2022), https://www.bcbsil.com/provider/standards/standard-requirements/bluecard-program.

[4] Defendants also raise two other arguments: (1) Dr. Griffin failed to exhaust administrative remedies prior to bringing this lawsuit; and (2) Defendants did not breach any fiduciary duty.  The Court need not address these arguments because, as discussed below, Dr. Griffin lacks statutory standing to bring her claims.

(11th Cir. 2021) (citing 29 U.S.C. §§ 1001, 1002). [5]  Section 502(a) of ERISA creates a federal cause of action for recovery of benefits under ERISA-governed plans.  *See* 29 U.S.C. § 1132(a)(1)(B) ("A civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]").   ERISA also allows participants to bring actions under section 502(a) against plan fiduciaries for breaches of fiduciary duty.  29 U.S.C. § 1104.

To maintain a civil action for breach of fiduciary duty under ERISA, a plaintiff must have statutory standing.  *Coca-Cola*, 989 F.3d at 931.  To have statutory standing, a plaintiff must be a plan "participant" or a plan "beneficiary."[6]  29 U.S.C. § 1132(a).  "Healthcare providers . . . are generally not 'participants' or 'beneficiaries' under ERISA."  *Physicians Multispecialty Grp. v. Health Care Plan of Horton Homes, Inc.*, 371 F.3d 1291, 1294 (11th Cir.

---

[5] In *Coca-Cola*, Dr. Griffin asserted claims similar to those raised here.  Until *Coca-Cola*, the Eleventh Circuit's opinions on Dr. Griffin's appeals were unpublished, but the court published *Coca-Cola* "in hopes of resolving this recurring litigation."  989 F.3d at 927.

[6] The statute further creates causes of action for the benefit of the Secretary of Labor and for a plan "fiduciary."  29 U.S.C. § 1132(a).  Dr. Griffin, however, does not purport to be acting on behalf of the Secretary of Labor or as a plan fiduciary.

2004).  However, a healthcare provider may "obtain derivative standing for payment of medical benefits through a written assignment from a plan participant or beneficiary." *Coca-Cola*, 989 F.3d at 932; *see also Cagle v. Bruner*, 112 F.3d 1510, 1515 (11th Cir. 1997) ("[N]either the text of § 1132(a)(1)(B) nor any other ERISA provision forbids the assignment of health care benefits provided by an ERISA plan.").

Although ERISA does not prohibit a plan participant or beneficiary from assigning benefits to a provider, the Eleventh Circuit made clear in *Physicians Multispecialty Group* that, because "ERISA-governed plans are contracts, the parties are free to bargain for certain provisions in the plan—like assignability." 371 F.3d at 1294-96.  Thus, "an unambiguous anti-assignment provision in an ERISA-governed welfare benefit plan is valid and enforceable." *Id.*  In *Physicians Multispecialty Group*, the Eleventh Circuit found the following anti-assignment provision to be unambiguous and enforceable:

> Except as applicable law may otherwise require, no amount payable at any time hereunder shall be subject in any manner to alienation by . . .  assignment . . . of any kind[ ].  Any attempt to . . . assign . . . any such amount, whether presently or hereafter payable, shall be void . . . .

*Id.* at 1295.  Because this anti-assignment provision was unambiguous, it precluded a healthcare provider's "maintenance of an ERISA action." *Id.* at 1296.

In the matter now before this Court, all nine of Dr. Griffin's patients' benefits plans contain similarly unambiguous anti-assignment provisions. For example, the anti-assignment provision in Defendant Crestline's plan, which governs claims for benefits by N.R., M.C., and K.B., states:

> A Member may not assign his or her right to receive benefits or benefit payments under this Evidence of Coverage to another person or entity except for routine assignment of benefit payments to a Participating Health Care Provider rendering Covered Services.

(Doc. 31-2 at 166.) Dr. Griffin is an out-of-network provider and does not allege that she is a "Participating Health Care Provider rendering Covered Services."

Defendant William Carter Company's plan, which governs C.S.'s claims for benefits, provides:

> No *plan participant* shall at any time, either during the time in which he or she is a *plan participant* in the *Plan*, or following his/her termination as a *plan participant*, in any manner, have any right to assign his/her right to sue to recover benefits under the *Plan*, to enforce rights due under the *Plan*, or to any other causes of action which he or she may have against the *Plan* or its fiduciaries.

(Doc. 33-3 at 91) (emphasis in original).

Defendant Labcorp's plan, which governs K.K's claims for benefits, states:

> The benefits described in this benefit booklet are provided only for MEMBERS. The benefits, the right to receive payment under the PLAN, and the right to enforce any claim arising under the PLAN

cannot be transferred or assigned to any other person or entity, including PROVIDERS. Blue Cross NC will not recognize any such assignment, and any attempted assignment is void if performed without Blue Cross NC's prior consent.

(Doc. 34-6 at 3.)  Dr. Griffin does not allege that she obtained the assignment from K.K. with Blue Cross NC's prior consent.

Non-Defendant Yardi System' plan, which governs J.F.'s claims for benefits, provides the following anti-assignment language:

You cannot assign your right to receive payment to anyone, except as required by a 'Qualified Medical Child Support Order' as defined by, and if subject to, ERISA or any applicable state law . . . . The coverage, rights, and benefits under the Plan are not assignable by any Member without the written consent of the Plan, except as provided above. This prohibition against assignment includes rights to receive payment, claim benefits under the Plan and/or law, sue or otherwise begin legal action, or request Plan documents or any other information that a Participant or beneficiary may request under ERISA. Any assignment made without written consent from the Plan will be void and unenforceable.

(Doc. 34-10 at 108-09.)

Similarly, the anti-assignment provision in Defendant Grady Health System's plan, which governs K.H.'s claims for benefits, states that members "cannot assign [their] right to receive payment to anyone else, except as required by a 'Qualified Medical Child Support Order' as defined by ERISA or any applicable Federal law."  (Doc. 48-4 at 86.)  And Defendant Truist's plan, which governs B.K.'s claims for benefits, provides that "[a]ny attempt to assign

13

such rights shall be null and void and unenforceable under all circumstances." (Doc. 32-2 at 36.)  Finally, non-Defendant Southeastern Data's plan, which governs M.S.'s claims for benefits, states that "benefits available under this Booklet are not assignable by any Member without obtaining written permission from us, unless in a way described in this Booklet."  (Doc. 34-9 at 119.)

Because these anti-assignment provisions are unambiguous, they are valid and enforceable under *Physicians Multispecialty Group*.  As a result, Dr. Griffin's patients were prohibited from assigning their rights and benefits to Dr. Griffin, and she could not stand in their shoes in asserting claims for benefits and in bringing this lawsuit.  She instead is a healthcare provider who was neither a "participant" nor a "beneficiary" under ERISA.

Dr. Griffin does not dispute that the plans at issue contain anti-assignment provisions.  Nor does she dispute that these provisions are unambiguous.  Instead, Dr. Griffin makes two arguments as to why the anti-assignment provisions should be considered unenforceable: (1) O.C.G.A § 33-24-54 precludes enforcement of the plans' anti-assignment provisions, and (2) a recent Supreme Court case, *Rutledge v. Pharmaceutical Care Management Association*, 141 S. Ct. 474 (2020), allegedly "overruled" *Physicians*

*Multispecialty Group* and prevents ERISA preemption of O.C.G.A. § 33-24-54.

Both arguments fail.

### B. O.C.G.A. § 33-24-54 Does Not Preclude Enforcement of Anti-Assignment Provisions

Dr. Griffin argues that the plans' anti-assignment provisions are unenforceable under Georgia law.  She relies on O.C.G.A. § 33-24-54, which states that:

> [W]henever an accident and sickness insurance policy, subscriber contract, or self-insured health benefit plan . . . provides that any of its benefits are payable to a participating or preferred [licensed] provider of health care services, [the plan must also] pay such benefits either directly to any similarly licensed nonparticipating or nonpreferred provider who has rendered such services, has a written assignment of benefits, and has caused written notice of such assignment to be given . . . or jointly to such nonparticipating or nonpreferred provider and to the insured.

O.C.G.A. § 33-24-54(a).  In other words, this statute "guarantees that if benefits are payable to preferred or participating providers under a plan, the plan must also pay benefits to non-participating or non-preferred healthcare providers to whom patients have assigned their rights."  *Griffin v. Focus Brands, Inc.*, 635 F. App'x 796, 800 (11th Cir. 2015).

Dr. Griffin argues that this statute requires recognition of a patient's assignment of benefits to a provider.  (*See* Doc. 38 at 8.)  The Eleventh Circuit, however, disagrees with Dr. Griffin's reading of O.C.G.A. § 33-24-54 and has

repeatedly found that "[n]othing in the statute explicitly prohibits a health benefits plan from barring assignment." *Focus Brands*, 635 F. App'x at 800; *Griffin v. Verizon Commc'n*, 641 F. App'x 869, 873 n.6 (11th Cir. 2016); *Griffin v. Gen. Mills, Inc.*, 634 F. App'x 281, 286 (11th Cir. 2015); *Griffin v. Health Sys. Mgmt., Inc.*, 635 F. App'x 768, 772 n.6 (11th Cir. 2015).  In *Focus Brands*, the Eleventh Circuit specifically rejected the very argument Dr. Griffin puts forth here: "[W]e fail to see how section 33-24-54 renders anti-assignment provisions unenforceable and decline to hold that the statute implicitly bars anti-assignment provisions."  635 F. App'x at 800.  In short, the Eleventh Circuit has consistently found that nothing in O.C.G.A. § 33-24-54 prevents enforcement of an anti-assignment provision in a benefits plan.  As a result, the statute does not save Dr. Griffin's claims from the standing problem she faces.

### C. ERISA Preempts O.C.G.A. § 33-24-54

Even assuming, *arguendo*, that O.C.G.A. § 33-24-54 precludes enforcement of anti-assignment provisions (as Dr. Griffin says it does), Dr. Griffin would still lack standing because "ERISA expressly preempts state laws that relate to employee benefit plans." *Griffin v. Coca-Cola Enterprises, Inc.*, 686 F. App'x 820, 822 (11th Cir. 2017).  ERISA section 514, the statute's express preemption provision, states that ERISA "shall supersede any and all

16

State laws insofar as they may now or hereafter *relate to* any employee benefit plan" governed by ERISA.  29 U.S.C. § 1144(a) (emphasis added).  A state law "relates to" an ERISA plan, and is thus preempted by ERISA, when it "has a connection with or reference to" such plan.  *Id.*; *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 96-97 (1983).

The Eleventh Circuit has "implicitly recognized" that ERISA preempts any state law that would mandate assignability of benefits.  *Griffin v. Verizon Commc'ns, Inc.*, 157 F. Supp.3d 1306, 1310 (N.D. Ga. 2015), *aff'd*, 641 F. App'x 869 (11th Cir. 2016) ("Even if O.C.G.A. § 33-24-54 could be read to mandate the recognition of assignments, *Physicians Multispecialty Group* implicitly recognized ERISA preemption of any such state law.").  In *Physicians Multispecialty Group*, the Eleventh Circuit explained that ERISA is silent on the issue of whether rights under a welfare benefit plan can be assigned to a third party.  371 F.3d at 1295.  This silence, however, could not "be interpreted to mandate affirmatively an absolute right to assign."  *Id.* at 1296.  Instead, the court understood this silence to mean that Congress intended to "leave[ ] the matter of assignability of welfare benefits to the agreement of the contracting parties."  *Id.*  In reaching this conclusion, the Eleventh Circuit was "persuaded by the reasoning of the majority of federal courts that have concluded that an assignment is ineffectual if the plan contains an

17

unambiguous anti-assignment provision." *Id.* at 1295 (citing *St. Francis Reg'l Med. Ctr. v. Blue cross & Blue Shield of Kan., Inc.*, 49 F.3d 1460, 1464 (10th Cir. 1995) ("We conclude that ERISA preempts state law on the issue of the assignability of benefits because material provisions in the employee benefits plans covered by ERISA would be directly affected if Kansas law were to be interpreted as prohibiting restrictions on assignment.")); *see also Dialysis Newco, Inc. v. Community Health Sys. Grp.*, 938 F.3d 246, 257 (5th Cir. 2019) (finding state law prohibiting anti-assignment provisions to be preempted by ERISA because the law "require[d] administrators to honor assignments" and be subject to lawsuits from "a third party not otherwise in contractual privity with the plan"); *Davidowitz v. Delta Dental Plan of Cal., Inc.,* 946 F.2d 1476, 1480-81 (9th Cir.1991) (holding Congressional intent "to allow the free marketplace to work out such competitive, cost effective, medical expense reducing structures as might evolve" weighed against requiring ERISA plans to recognize assignments).

In short, *Physicians Multispecialty Group* held that ERISA requires that assignability of welfare benefits be left to the contracting parties.  So, to the extent O.C.G.A. § 33-24-54 purports to mandate the assignability of benefits in an ERISA-governed plan, *Physicians Multispecialty Group* "implicitly recognizes" that the statute is preempted by ERISA.  *Verizon Commc'ns*, 157

F. Supp.3d at 1310.  O.C.G.A. § 33-24-54 cannot require recognition of an assignment where the express terms of an ERISA-governed plan forbid one.[7]

Dr. Griffin does not dispute that *Physician Multispecialty Group* "implicitly recognized" that ERISA preempts state laws mandating assignability of benefits.  Instead, Dr. Griffin argues that following the Supreme Court's opinion in *Rutledge v. Pharmaceutical Care Management Association*, 141 S. Ct. 474 (2020), "the days of *Physicians* are gone."  (Doc. 41 at 9.)

At issue in *Rutledge* was an Arkansas law that required pharmacy benefit managers ("PBMs")[8] "to reimburse pharmacies for prescription drugs

---

[7] Again, this preemption analysis is largely academic because, as explained above, the Eleventh Circuit has repeatedly found (albeit in unpublished opinions) that O.C.G.A. § 33-24-54 does *not* prohibit benefits plans from incorporating anti-assignment provisions.

[8] *Rutledge* explained the role of PBMs:

> PBMs serve as intermediaries between prescription-drug plans and the pharmacies that beneficiaries use.  When a beneficiary of a prescription-drug plan goes to a pharmacy to fill a prescription, the pharmacy checks with a PBM to determine that person's coverage and copayment information.  After the beneficiary leaves with his or her prescription, the PBM reimburses the pharmacy for the prescription, less the amount of the beneficiary's copayment. The prescription-drug plan, in turn, reimburses the PBM.

141 S. Ct. at 478.

at a rate equal to or higher than the pharmacy's acquisition cost." *Id.* at 481. The question before the Supreme Court was whether the Arkansas law, which was enacted to regulate costs, had an "impermissible connection" with an ERISA plan and was therefore preempted. *Id.* at 480-81. In its analysis, the Supreme Court described the circumstances under which ERISA preemption does *not* apply: "ERISA does not pre-empt state rate regulations that merely increase costs or alter incentives for ERISA plans without forcing plans to adopt any particular scheme of substantive coverage." *Id.* at 480. Instead, ERISA is "primarily concerned with pre-empting laws that require providers to structure benefit plans in particular ways, such as . . . by binding plan administrators to specific rules for determining beneficiary status." *Id.* at 480 (citing *Egelhoff v. Egelhoff*, 532 U.S. 141, 147 (2001)). Ultimately, the Supreme Court concluded ERISA did not preempt the Arkansas PBM law because it "merely affect[ed] costs" and did "not require plan administrators to structure their benefit plans in any particular manner." *Id.* at 480-82.

Here, Dr. Griffin argues that *Rutledge* overturned *Physicians Multispecialty Group* and requires the Court to recognize the assignments she received from her patients. Specifically, Dr. Griffin contends that, like Arkansas' PBM law, O.C.G.A. § 33-24-54 is not preempted by ERISA. The Court cannot agree. Nothing in *Rutledge* undermines *Physicians*

*Multispecialty Group*.  *Rutledge* makes no mention of assignability of benefits.
Nor is *Physicians Multispecialty Group* inconsistent with *Rutledge*'s ERISA
preemption analysis.   If O.C.G.A. § 33-24-54 prohibited anti-assignment
provisions in ERISA-governed benefits plans (which, again, it does not), such
a prohibition would go far beyond "merely increas[ing] costs" or "alter[ing]
incentives." *Rutledge*, 141 S. Ct. at 480.   Instead, precluding enforcement of
an anti-assignment provision would "bind plan administrators" to specific
rules for determining who can be a beneficiary under a plan. *Id.*  Such a rule
would "directly affect central matters of plan administration"—which is
precisely the type of state law with which ERISA is "primarily concerned." *Id.*
at 482.  *Rutledge*, if anything, reinforces the notion that state laws cannot
dictate ERISA-governed plan terms that Congress intended to be determined
by the contracting parties, such as assignability.   It is not the case that
*Rutledge* overturned *Physicians Multispecialty Group*.  As a result, *Rutledge*
does not alter the Court's ERISA standing analysis.

Dr. Griffin filed a Notice of Supplemental Authority (Doc. 55), to which
she attached a copy of the Supreme Court's decision in *Gallardo By and
Through Vassallo v. Marstiller*, 142 S. Ct. 1751 (2022).  Dr. Griffin argues that
*Gallardo* "supports *Rutledge* in that state mandatory assignment [statutes] are
exempt from anti-alienation provisions and are not pre-empted by federal laws,

21

including ERISA." (Doc. 59 at 3.)  Again, Dr. Griffin is incorrect in both her contention that Georgia has a "mandatory assignment" statute that nullifies anti-assignment provisions in ERISA-governed plans and in her argument that *Rutledge* held that ERISA does not preempt such a statute.  Dr. Griffin is further incorrect in arguing that *Gallardo* supports her standing argument.

In *Gallardo*, the Supreme Court held that the federal Medicaid Act "permits a State to seek reimbursement from settlement payments allocated for future medical care."  142 S. Ct. at 1755.  Specifically, the Supreme Court found, *inter alia*, that a Florida statute requiring state Medicaid beneficiaries to automatically assign to the state any right to third-party payments for medical care, did not conflict with the federal Medicaid Act's "anti-lien provision" prohibiting states "from recovering medical payments from a beneficiary's 'property.'"  *Id.* at 1756 (citing Fla. Stat. § 409.910(6)(b)) and 42 U.S.C. § 1396p(a)(1)).  *Gallardo* does not involve ERISA, does not cite *Rutledge*, and does not cast doubt on the Eleventh Circuit cases repeatedly upholding enforcement of anti-assignment provisions in ERISA-governed benefits plans.  Thus, Dr. Griffin's supplemental authority does not alter the Court's conclusion that she lacks statutory standing under ERISA.

In summary, Dr. Griffin's patients' benefits plans contain unambiguous anti-assignment provisions, and therefore the assignments Dr. Griffin

purportedly received are ineffectual.  *See Physicians Multispecialty Grp.*, 371 F.3d at 1296.   Without an assignment of rights and benefits from a "participant" or "beneficiary" of an ERISA-governed plan, Dr. Griffin lacks statutory standing to bring her breach of fiduciary claims under ERISA. O.C.G.A. § 33-24-54 does not prohibit enforcement of anti-assignment provisions, and even if it did, such prohibition would be preempted by ERISA. The Supreme Court's rulings in *Rutledge* and *Gallardo* do not compel a different result.  Accordingly, Dr. Griffin has failed to state a claim upon which relief can be granted.

## V.    Conclusion

Defendant Laboratory Corporation of America Holdings' motion to dismiss (Doc. 29), Defendant Crestline Hotel and Resorts, LLC's motion to dismiss (Doc. 31), Defendant Truist Financial Corporation's motion to dismiss (Doc. 32), Defendant William Carter Company's motion to dismiss (Doc. 33), Defendant Blue Cross Blue Shield Healthcare Plan of Georgia, Inc.'s motion to dismiss (Doc. 34), and Defendant Grady Memorial Hospital Corporation's motion for summary judgment (Doc. 48) are **GRANTED**.  The Clerk of Court is directed to close this case.

**SO ORDERED** this 2nd day of December, 2022.


SARAH E. GERAGHTY
United States District Judge